[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2011
JOHN LEY
CLERK

_____

No. 10-13105

_____

D. C. Docket No. 6:10-cv-00139-ACC-DAB

VIDA BAPTISTA,
for herself, and on behalf of others similarly situated,

                                        Plaintiff-Appellant,

                    versus

JPMORGAN CHASE BANK, N.A.,
a.k.a. Washington Mutual Bank,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 11, 2011)

Before DUBINA, Chief Judge, HILL, Circuit Judge, and GOLDBERG,* Judge.

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting
by designation.

DUBINA, Chief Judge:

**I.**

Vida Baptista appeals the district court's dismissal of her two-count class action complaint against JP Morgan Chase Bank ("Chase") for failure to state a claim upon which relief can be granted.

On or about October 1, 2009, one of Chase's account holders wrote Baptista a check for $262.48. Baptista was not an account holder at Chase. Baptista brought the check in person to Chase in order to cash it. Chase charged a $6.00 fee to provide cash immediately.

In response, Baptista filed this class action on January 28, 2010, against Chase seeking damages on two counts. First, she alleged that Chase's charging of a check-cashing service fee violated Fla. Stat. § 655.85. Second, she brought a claim for unjust enrichment.

Chase filed its Motion to Dismiss on March 1, 2010, moving to dismiss on three primary grounds. First, Chase alleged that Fla. Stat. § 655.85 did not apply to Baptista because that statute only regulates fees charged between banks.[1] Second, Chase alleged that both of Baptista's claims are preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.* ("NBA"). Finally, Chase alleged that Baptista's unjust

---

[1]Commonly known as "exchange fees."

enrichment claim failed as a matter of law because she did not, and could not, allege essential elements of the cause of action.

On June 4, 2010, the district court granted Chase's motion, dismissing both of Baptista's claims as preempted by the NBA, and Baptista appealed. Baptista alleges that reversal of the district court is proper because: (1) a clear reading of Fla. Stat. § 655.85 shows that it is applicable to a fee charged on a personal check presented by the payee in person; (2) Fla. Stat. § 655.85 is not preempted by the NBA; and (3) Baptista's unjust enrichment claim under Florida law is not preempted by the NBA. After reading the parties' briefs and having the benefit of oral argument, we affirm the judgment of dismissal.

## II.

This court reviews a district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted *de novo*. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III.

The Florida statute at issue specifically prohibits a bank from "settl[ing] any check drawn on it otherwise than at par." Fla. Stat. § 655.85. The district court concluded that § 655.85 was preempted by the NBA, specifically citing two provisions. First, it cited 12 U.S.C. § 24(Seventh), which allows banks to "exercise

. . . all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt." Second, it cited a regulation promulgated by the Office of Comptroller of the Currency ("OCC"), the agency empowered by the NBA to supervise and regulate federally chartered banks in accordance with the act, which states that a national bank may "charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). The OCC interprets "customer" to include "any person who presents a check for payment." *Wells Fargo Bank of Tex. N.A. v. James*, 321 F.3d 488, 490 & n.2 (5th Cir. 2003) (citing three interpretive letters sent by the OCC).

The Supreme Court has identified three types of preemption: express preemption, field preemption, and conflict preemption. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604–05, 111 S. Ct. 2476, 2481–82 (1991). Baptista and Chase both make much ado about which type of preemption is applicable to the NBA, ignoring the fact that the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd–Frank Act") amended the NBA's preemption section to address this very issue. Section 5136(b)(1)(B) of the Dodd–Frank Act amended the NBA to state the following:

4

State consumer financial laws are preempted, only if . . . in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N. A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers . . . .

12 U.S.C. § 25b(1). In *Barnett Bank of Marion County, N. A. v. Nelson*, the Supreme Court addressed a Florida statute that prohibited national banks from offering insurance coverage in small towns. In determining whether there was an "irreconcilable conflict" between the state statute and the NBA, the Court found the controlling question to be whether the state statute "forbid[s], or . . . impair[s] significantly, the exercise of a power that Congress explicitly granted." 517 U.S. 25, 33, 116 S. Ct. 1103, 1109 (1996). Thus it is clear that under the Dodd-Frank Act, the proper preemption test asks whether there is a significant conflict between the state and federal statutes—that is, the test for conflict preemption.

Few cases have discussed the effect of the NBA and its regulations on so-called "par value" statutes. In fact, only one of our sister circuits has addressed the question head on. In *Wells Fargo Bank of Texas N.A. v. James*, the Fifth Circuit addressed a par value statute almost identical to the one at issue here. 321 F.3d at 491. This statute prevented all banks operating in Texas from charging fees to non-account-holding payees cashing checks at those banks. Specifically, the

5

statute stated, "a payor bank shall pay a check drawn on it against an account with a sufficient balance at par, without regard to whether the payee holds an account at the bank." *Id.* at 490 (citing Tex. Bus. & Com. Code Ann. § 4.112(a)). A group of federally-chartered national banks challenged the law in a declaratory judgment action in which the district court found it preempted by the NBA. The state appealed.

The Fifth Circuit determined that because Congress did not express a specific intent to displace state banking laws, conflict preemption applied. *Id.* at 491. Applying the standard announced in *Barnett Bank*, it found the par value statute was in "irreconcilable conflict" with the NBA because the NBA "expressly authorize[d] an activity which the state scheme disallows." *Id.* & n.3 (citing *Barnett Bank*, 517 U.S. 25, 116 S. Ct. 1103). In order to reach this result, the Fifth Circuit had to take three essential steps. First, it determined that the OCC had the authority to promulgate rules such as, and including, 12 C.F.R. § 7.4002(a). Second, it determined that the OCC's interpretation of the word "customer" to include any person presenting a check for payment warranted deference under *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997)—the standard applicable to an agency's interpretation of its own regulations. Finally, the Fifth Circuit found that a bar on a bank's ability to charge fees to persons presenting checks for

6

payment would clearly and irreconcilably conflict with the OCC's allowance of the charging of such fees. *Id.* at 495.

We adopt the reasoning of the Fifth Circuit and hold that Fla. Stat. § 655.85 is preempted by the OCC's regulations promulgated pursuant to the NBA. Congress clearly intended that the OCC be empowered to regulate banking and banking-related activities. It is not unreasonable to define "customer" as any person presenting a check for payment. And finally, there is a clear conflict here: the OCC specifically authorizes banks to charge fees to non-account-holders presenting checks for payment. The state's prohibition on charging fees to non-account-holders, which reduces the bank's fee options by 50%, is in substantial conflict with federal authorization to charge such fees.[2] Moreover, we conclude

---

[2]At oral argument Baptista argued that *Williamson v. Mazda Motor Corp. of Am.*, 562 U.S. __, 131 S. Ct. 1131 (2011), governs this case. We disagree. That case addressed whether a federal regulation requiring shoulder belts for all exterior seats but allowing the manufacturer the choice of installing either lap or shoulder belts for all interior seats would preempt a tort claim arising out of a manufacturer's use of a lap belt. The Court held that because "providing manufacturers with this seatbelt choice [was] not a significant objective of the federal regulation," the tort suit was not barred. *Id.* at __, 131 S. Ct. at 1133. The objective of that regulation was to regulate the safety of motor vehicles.

Here the significant objective of 12 C.F.R. § 7.4002 is to allow national banks to charge fees and to allow banks latitude to decide how to charge them. It states that "the establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* Because allowing the banks the option of *how* to charge fees was a significant objective of the NBA and regulations promulgated thereunder, *Williamson* is inapposite to this case.

that because Baptista's unjust enrichment claim relies on identical facts as her

claim under Fla. Stat. § 655.85, it too is preempted.[3]

For the reasons discussed above, we affirm the judgment of dismissal.

**AFFIRMED.**

---

[3]We would also conclude that Baptista's unjust enrichment claim fails as a matter of law because Baptista cannot prove each element of the claim. *See Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 2006) ("To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.").

"When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007). Here, Baptista requested to have the check cashed immediately upon presentment to Chase, and in return, Chase requested a $6.00 fee. Baptista agreed to the fee. If Baptista had chosen to deposit the check in her own account and wait for processing, no fee would have been levied. The fee was only levied because Chase conferred an additional benefit on Baptista, that is, immediate payment of the check. Because Baptista cannot show that Chase failed to give consideration for her $6.00, her claim for unjust enrichment fails as a matter of law.