**Derek PEREIRA and Camila De Freitas, Plaintiffs,**

v.

**REGIONS BANK, Defendant.**

**Case No. 6:12–cv–1383–Orl–22TBS.**

United States District Court, M.D. Florida, Orlando Division.

Jan. 2, 2013.

Alberto E. Lugo–Janer, Alberto E. Lugo–Janer, Esq., Windermere, FL, Samuel A. Walker, Samuel A. Walker, Montgomery, AL, Teeluck Persad, CPLS, PA, Orlando, FL, for Plaintiffs.

David Stuart Garbett, Elizabeth B. Dombovary, Garbett, Stiphany, Allen & Roza, PA, Miami, FL, for Defendant.

## ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court on Defendant Regions Bank's ("Defendant") Motion to Dismiss (Doc. No. 12), to which Plaintiffs Derek Pereira and Camila De Freitas ("Plaintiffs") filed a Response in opposition (Doc. No. 17). With leave of Court, Defendants filed a Reply (Doc. No. 25) to that Response.

### I. BACKGROUND

The facts of this case are simple: at some point, Plaintiffs each cashed a check at one of Defendant's branches, for which Defendant charged a fee. As a result, Plaintiffs claim, the check was settled "at less than par" because Plaintiffs received less in cash than the face amount of the checks. (Pl.'s Compl. (Doc. No. 4), pp. 2–3.) Plaintiffs each allege two claims against Defendant in a complaint filed on August 7, 2012, in state court: (1) violation of Florida Statute § 655.85, which states, in part, "an institution may not settle any check drawn on it otherwise than at par"; and (2) unjust enrichment under the common law of Florida.[1] (*Id.* at pp. 2–5.) On September 10, 2012, Defendant filed a Notice of Removal (Doc. No. 1), asserting that this Court has subject matter jurisdiction pursuant to provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C.

---

1. Plaintiffs also sought certification of their cause as a class action. Because the substance of that issue is not presently before the Court, it will not be addressed.

§ 1332(d), or, alternatively, federal question jurisdiction under 28 U.S.C. § 1331.

## II. BASIS FOR JURISDICTION

A state court action cannot be removed to federal court unless the federal district court could exercise original jurisdiction over the suit. 28 U.S.C. § 1441(a) (2006). Pursuant to an Act of Congress,

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C. § 1332(d)(2) (2006). Removal of class actions is governed by 28 U.S.C. § 1453, which permits a class action to be removed to a federal district court in line with the procedures outlined in 28 U.S.C. § 1446. Pursuant to 28 U.S.C. § 1332(d)(11), four requirements must be met before a district court in the Eleventh Circuit may entertain a removed class action:

> (1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact.

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir.2010) (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202–03 (11th Cir.2007)). Plaintiffs do not dispute that each of the above elements has been met in this case. Defendants have certified that their income from the disputed check cashing fees in Florida amounted to almost $9 million. (Holt Supplemental Declaration (Doc. No. 31–1), p. 2.) The Court, having no cause to doubt any of Defendant's representations, has jurisdiction over the case.[2]

## III. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts as true the factual allegations in Plaintiff's complaint and draws all reasonable inferences in the light most favorable to the Plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir.2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R.Civ.P. 8(a)(2)). The Plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## IV. ANALYSIS

### A. Federal Law Preempts Florida Statute § 655.85

The crux of Plaintiffs' argument is that a statute in Florida's financial institutions

---

**2.** Because the Court has jurisdiction pursuant to CAFA, it is unnecessary to address Defendant's arguments for federal question jurisdiction under 28 U.S.C. § 1331. As the parties are no doubt aware, however, the Court has previously expressed its opinion on that subject. *See McDaniel v. Fifth Third Bank*, No. 6:12–cv–1229–ACC–TBS (M.D.Fla. Nov. 7, 2012) (granting motion to remand); *Ward v. Branch Banking and Trust Co.*, No. 6:12–cv–1278–ACC–GJK (M.D.Fla. Nov. 6, 2012) (same).

code prohibits banks from charging check cashing fees. The statute at issue reads:

> Whenever any check is forwarded or presented to an institution for payment, except when presented by the payee in person, the paying institution or remitting institution may pay or remit the same, at its option, either in money or in exchange drawn on its reserve agent or agents in the City of New York or in any reserve city within the Sixth Federal Reserve District; however, an institution may not settle any check drawn on it otherwise than at par. The provisions of this section do not apply with respect to the settlement of a check sent to such institution as a special collection item.

Fla. Stat. § 655.85 (2012). Plaintiffs believe that this statute forbids any bank operating in Florida from charging a fee for cashing a check—in the language of the statute, deducting the amount of the fee from the "par" amount of the check and presenting the remainder to the payee.[3] Defendant presents one argument, based on a close reading of the statute and its legislative history, for rejecting Plaintiffs' interpretation of the statute. Defendant also offers four other reasons for dismissing Plaintiffs' claims as a matter of law: federal preemption, violation of the dormant commerce clause, and lack of a private right of action in the statute. Of these arguments, the Court need only consider federal preemption to find that Plaintiffs' claims under Florida Statute § 655.85 should be dismissed.

### 1. Preempted as applied to National Banks

This Court recently held, and the Eleventh Circuit affirmed, that regulations promulgated by the Office of the Comptroller of the Currency ("OCC") pursuant to the National Bank Act ("NBA") preempted Florida Statute § 655.85 with respect to a federally-chartered bank. *Baptista v. JP Morgan Chase Bank, N.A.,* 640 F.3d 1194, 1198 (11th Cir.2011). "Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (quoting *Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)). There are three mechanisms by which a federal law can preempt a state law: express preemption, field preemption, and conflict preemption; each turns on congressional intent. *Id.* at 604–05, 111 S.Ct. 2476. The Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd–Frank Act") amended the NBA to preempt state banking laws whenever "the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers...." 12 U.S.C. § 25b(b)(1)(B). This is clearly a reference to conflict preemption, which occurs when "compliance with both federal and state regulations is a physical impossibility ... or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Mortier,* 501 U.S. at 605, 111 S.Ct.

---

**3.** This Court concluded that a federally-chartered bank was permitted to charge check cashing fees under the Florida Statute. *Baptista v. JP Morgan Chase Bank N.A.,* No. 6:10–cv139–Orl–22DAB, 2010 WL 2342436, at *1–3 (M.D.Fla. June 4, 2010). Two years after that decision, in *Baptista v. PNC Bank, N.A.,* the Fifth DCA concluded, without referencing this Court's holding, that a state-chartered institution was not permitted to charge check cashing fees under the Florida Statute. 91 So.3d 230, 231–33 (Fla. 5th DCA 2012) (per curiam). The Court does not need to reconcile these decisions because federal law preempts the Florida Statute.

2476 (internal citations and quotation marks omitted).

Without restating the entirety of this Court's previous opinion or the complementary reasoning of the Eleventh Circuit, Florida Statute § 655.85 conflicts with federal banking law, embodied by the NBA and administrative regulations of the OCC, to such a great extent that it is preempted under the Dodd–Frank Act's standard. *See Baptista,* 640 F.3d at 1196–98. However, the NBA and the OCC regulations at issue apply only to national (federally-chartered) banks. *See, e.g.,* 12 U.S.C. § 24 (Seventh) (listing powers granted to "national banking association[s]"); 12 C.F.R. § 7.4002(a) ("A national bank may charge its customers non-interest charges and fees...."). Thus, the original *Baptista* decisions do not, standing alone, support the conclusion that the Florida Statute is preempted with respect to state-chartered banks. Nevertheless, another provision of federal banking law operates in conjunction with the aforementioned sections of the NBA and OCC regulations to preempt application of Florida's par value statute to banks chartered by states other than Florida.

### 2. Preempted as applied to State Banks[4]

■ On July 3, 1997, President Clinton signed the Riegle–Neal Amendments Act of 1997 into law. Pub. L. No. 105–24, 111 Stat. 238 (1997). The Act was passed in order to "clarify the applicability of host State laws to any branch in such State of an out-of-State bank...." *Id.* The critical portion of the law for present purposes is Section 2(a), which amended 12 U.S.C. § 1831a(j)(1) to read:

---

**4.** As an initial observation, this Court is not bound by the decision of Florida's Fifth District Court of Appeal in *Baptista v. PNC Bank* with respect to its holding that Florida Statute § 655.85 is not preempted by federal law.

The laws of a host State, including laws regarding community reinvestment, consumer protection, fair lending, and establishment of intrastate branches, shall apply to any branch in the host State of an out-of-State State bank to the same extent as such State laws apply to a branch in the host State of an out-of-State national bank. To the extent host State law is inapplicable to a branch of an out-of-State State bank in such host State pursuant to the preceding sentence, home State law shall apply to such branch.

Based on the proper interpretation and legislative history of this statute, the Court concludes that Congress intended to preempt the effect of host state banking laws on non-Florida state-chartered banks to the same extent as on federally-chartered banks.

Plaintiffs argue that § 1831a(j)(1) merely addresses the applicability of state laws to banks, not their enforceability. To escape the Eleventh Circuit's prior preemption holding in *Baptista,* Plaintiffs argue that Florida Statute § 655.85 applies equally to all banks, but is only enforceable against state-chartered banks because federal law preempts enforcement against federally-chartered banks. (*See* Pls.' Resp. Mot. Summ. J. (Doc. No. 17), p. 5 ("However, a State law that conflicts with the National Banking Act may still be **enforced** against State banks because the National Banking Act does not apply to State banks.")) This interpretation of § 1831a(j)(1) violates basic principles of statutory construction and runs contrary to prior Supreme Court precedent.

*See Tafflin v. Levitt,* 493 U.S. 455, 465, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (holding that federal courts are "not bound by state court interpretations" of federal law).

Where the plain meaning of a statute is ambiguous, courts in the Eleventh Circuit "apply the traditional tools of statutory construction" to "illuminate statutory intent." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir.2003). If, as is the case here, "the statutory language is not entirely transparent," courts should "employ traditional canons of construction" and then, if necessary, resort to legislative history "to assist . . . in determining the meaning of a particular statutory provision by focusing on the broader, statutory context." *Id.* (internal quotation marks omitted).

Plaintiffs are never entirely clear as to what § 1831a(j)(1) would actually do under their interpretation. It appears Plaintiffs believe that § 1831a(j)(1) requires state banking statutes to be facially neutral between state banks and national banks, and if they are not, then home state law applies to out-of-state state banks. This understanding of the statute ignores at least two key principles of statutory construction. First, "a single word in isolation cannot be dispositive of statutory intent," *Shotz*, 344 F.3d at 1173, yet that is exactly what Plaintiffs attempt to show by distinguishing "apply" from "enforce" without considering the rest of the statute or the Act in its entirety. Second, "a word is known by the company it keeps," *Edison v. Douberly*, 604 F.3d 1307, 1309 (11th Cir.2010) (internal quotation marks omitted), and in this case, the word "apply" would not make sense using Plaintiffs' interpretation. Reading "shall apply . . . to the same extent" to mean merely "shall be facially neutral" does not make sense. State laws are either facially neutral or they are not—there is no "extent" to which a law "applies" to one type of bank or another if "apply" is limited to whether or not the type of bank is mentioned in the statute. However, "extent" makes much more sense if it is read as modifying the degree to which a state statute affects a bank, as Defendant proposes.

The Supreme Court has previously interpreted very similar language, including the words "apply" and "extent," in the broader fashion advocated by Defendant. In *Watters v. Wachovia Bank, N.A.*, the Court analyzed an OCC regulation that read, in part, "[u]nless otherwise provided by Federal law or OCC regulation, *State laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank.*" 550 U.S. 1, 20, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007) (emphasis added). Section 1831a(j)(1) uses practically the same language, except "out-of-state state bank" replaces "national bank operating subsidiaries." According to the Supreme Court in *Watters*, the OCC regulation means that the operating subsidiary is "subject to the same terms and conditions that govern the national bank itself; [and] that power cannot be significantly impaired or impeded by state law" and that "whether conducted by the bank itself or by an operating subsidiary, [a national banking entity is] empowered to do only what the bank itself could do." *Id.* at 21, 127 S.Ct. 1559. The Supreme Court effectively interpreted the OCC regulation, which closely parallels § 1831a(j)(1), to treat the operating subsidiary and the parent bank as equivalents vis-à-vis the state banking legislation under consideration in that case. The statutes at issue in the case at bar should be interpreted in the same fashion, rendering out-of-state state banks the equivalents of out-of-state national banks vis-à-vis Florida Statute § 655.85.

Plaintiffs' interpretation of § 1831a(j)(1) also runs contrary to the construction suggested by the legislative history of the Riegle–Neal Amendments Act. First, consideration of the original version of § 1831a(j)(1) demonstrates that Congress

wanted to move away from host state regulation of out-of-state state banks. The original Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994 added a new subsection (j) to 12 U.S.C. § 1831a (which was part of the Federal Deposit Insurance Act). Pub. L. No. 103–328, 108 Stat. 2338 (1994). The 1994 version of the subsection was materially different from the present version in one key respect: the 1994 version stated that "[t]he laws of a host State ... shall apply to any branch in the host State of an out-of-State State bank to the same extent as such State laws apply to **a branch of a bank chartered by that State.**" *Id.* at § 102(b)(3)(B) (emphasis added). This stands in sharp contrast to the current edition, which applies host state law to out-of-state state banks "to the same extent as such State laws apply to **a branch in the host State of an out-of-State national bank.**" 12 U.S.C. § 1831a(j)(1) (emphasis added). Congress obviously intended to shift away from treating out-of-state state banks as equivalent to in-state state banks,

yet that is exactly what Plaintiffs' construction of the statute seeks to do.

Plaintiffs also fail to mention floor statements, committee hearing notes, or other useful evidence of Congress' intent from the legislative process. Defendant cites the statement of Rep. Roukema, who noted that the purpose of the statute was to "provide parity between State-chartered banks and national banks" such that out-of-state state banks must abide by the host state's rules "unless the State law has been preempted [with respect to] national banks." [5] *See* 143 Cong. Rec. H3088–02 (daily ed. May 21, 1997) (statement of Rep. Marge Roukema). Others supporting the bill in both the House and Senate understood the Act to have the same effect,[6] as did those opposing the measure.[7]

Proper interpretation of 12 U.S.C. § 1831a(j)(1), including consideration of statutory construction tools and Supreme Court interpretation of similar language, together with reference to the legislative history of the statute, clearly supports a finding that Congress intended to preempt

5. Lest there be any doubt, Rep. Roukema gave a specific example of how the Riegle–Neal Amendments Act might affect an out-of-state state bank: "if a New Jersey State-chartered bank branches into New York and is permitted to sell securities in New Jersey, it may do so in New York if New York State banks are permitted to do so **or national banks in New York may do so.**" 143 Cong. Rec. H3088–02 (daily ed. May 21, 1997) (statement of Rep. Marge Roukema) (emphasis added).

6. *See, e.g., id.* (statement of Federal Reserve Board Chairman Alan Greenspan) ("The Riegle–Neal Clarification Act of 1997 is an effort to create parity between national and state-chartered banks in operating out-of-state branches."); *id.* (statement of Independent Bankers Association of America) ("The Riegle–Neal Clarification Act clarifies that generally, state chartered banks will operate under the laws of their chartering state wherever they do business, up to the powers of national banks."); 143 Cong. Rec. S5637–01 (daily ed.

June 12, 1997) (statement of Sen. Al D'Amato) ("[The Amendments Act] would make clear that host State branches would be allowed to exercise powers granted by their home State if such powers are permissible for either banks chartered by the host State or for national bank branches in that host State."); *id.* (statement of Sen. Paul Sarbanes) ("[T]he amendment requires that no provision of [§ 1831a(j)(1) ] shall be construed as affecting the applicability of Federal law to State banks and State bank branches in the home State or the host State.").

7. "[The Amendments Act] says that a state-chartered bank operating outside its chartering state may ignore the laws of the state in which it is operating if a national bank may do so." *Out of State Banks: Hearings on H.R. 1306 Before the Subcomm. on Fin. Inst. and Consumer Credit of the House Comm. On Banking and Fin. Services,* 105th Cong. (1997) (statement of Michelle Meier, Counsel for Gov't Affairs, Consumers Union).

the imposition of host-state banking laws on out-of-state state banks to the same extent that they are preempted as to out-of-state national banks. As previously discussed, Florida Statute § 655.85 is inapplicable to national banks under the NBA and various OCC regulations. Based on this Court's interpretation of the first sentence of 12 U.S.C. § 1831a(j)(1), Florida Statute § 655.85 is equally inapplicable to out-of-state state banks. That determination activates the second sentence of § 1831a(j)(1), so home state (here, Alabama) law controls. Under Alabama banking law, Defendant is permitted to charge a fee for cashing a check. Ala. Code § 5–5A–18(2) (2012) ("Corporations formed for the purpose of doing business as a bank may ... [r]eceive and pay out deposits, with or without interest, pay checks, and impose charges for any services...."). Therefore, Plaintiffs fail to state a claim under Florida Statute § 655.85.

### B. Unjust Enrichment Claims

 Plaintiffs' unjust enrichment claims also fail because they do not allege any facts other than those forming the basis of their claims in Counts I and II. Alabama banking law, which controls pursuant to 12 U.S.C. § 1831a(j)(1), authorizes Defendant to collect the fees giving rise to the unjust enrichment claims. Thus, Plaintiffs' unjust enrichment claims are also preempted by federal law for the same reasons and to the same extent as their other claims. Moreover, the Court notes and relies upon the Eleventh Circuit's holding in *Baptista:*

> We would also conclude that Baptista's unjust enrichment claim fails as a matter of law because Baptista cannot prove each element of the claim. See *Della Ratta v. Della Ratta,* 927 So.2d 1055, 1059 (Fla.Dist.Ct.App.2006) ("To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on

the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.").

640 F.3d at 1198 n. 3. Here, as in *Baptista,* Defendant immediately settled the checks and presented Plaintiffs with cash. In return for this expediency, Plaintiffs agreed to pay a fee to Defendants. Where, as occurred here, "a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs,* 959 So.2d 322, 331–32 (Fla. 5th DCA 2007). It is not inequitable for Defendant to charge a fee for expedited processing of the check and immediate payment in cash, and Plaintiffs' claims for unjust enrichment have no merit.

### V. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant Regions Bank's Motion to Dismiss (Doc. No. 12), filed September 20, 2012, is **GRANTED.**

2. Plaintiffs Derek Pereira and Camila De Freitas' Motion to Stay All Proceedings (Doc. No. 37), filed October 23, 2012, is **DENIED AS MOOT.**

3. Defendant's Motion for Sanctions (Doc. No. 43), filed December 7, 2012, is **DENIED.** The arguments in Plaintiffs' Response, though unpersuasive, were not so frivolous or untenable as to warrant sanctions.

4. Defendant's Motion for Leave to File Reply (Doc. No. 45), filed December 12, 2012, is **DENIED AS MOOT.**

5. Because amendment would be futile, all of Plaintiffs' claims against Defendant are hereby **DISMISSED with prejudice.**

6. The Clerk is directed to **CLOSE** the case.