FAY, Circuit Judge:
Marc Wiersum appeals the dismissal with prejudice of his alleged wrongful-termination action, filed under the Florida Whistleblower Act (“FWA”),[1] which the district judge determined was preempted by the National Bank Act (“NBA”).[2] We affirm.
I. BACKGROUND
On March 15, 2013, U.S. Bank, N.A., a federally chartered bank headquartered in Minnesota, hired Wiersum, a resident of Miami-Dade County, Florida, as a Vice President and Wealth Management Consultant for its Naples office. During his brief employment, Wiersum alleged he witnessed U.S. Bank condition credit upon asset management, in violation of 12 U.S.C. § 1972. He objected to certain activities he believed were “unlawful tying arrangement(s)” and refused to participate in them. Complaint at 2 ¶ 19. Following his objections, Wiersum alleged U.S. Bank treated him adversely by terminating his employment on May 31, 2013, in retaliation.
Wiersum filed a single-count complaint against U.S. Bank in the Southern District of Florida on diversity jurisdiction and alleged a violation of the FWA, Fla. Stat. § 448.102(3). U.S. Bank moved to dismiss Wiersum’s complaint under Federal Rule of Civil Procedure 12(b)(6) for federal preemption. It argued Wiersum’s FWA complaint was barred by the NBA, which permits federally chartered banks to dismiss officers “at pleasure.” 12 U.S.C. § 24 (Fifth). Wiersum responded; U.S. Bank replied. The district judge concluded the FWA, prohibiting retaliatory personnel action by an employer, and the NBA are in direct conflict regarding the at-pleasure termination provision of the NBA. Wiersum did not move for reconsideration and appealed the dismissal with prejudice of his FWA case. Deciding whether the NBA preempts the FWA, concerning a state-employment contract, is a first-impression issue for our circuit.
II. DISCUSSION
We review de novo a district judge’s granting a motion to dismiss for failure to state a claim under Rule 12(b)(6), accept the complaint allegations as true, and construe them most favorably to the plaintiff. Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir.2012). A complaint must contain “enough facts to state a claim to relief that is plausible on its face” to survive dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). “[C]onslusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.” Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir.2002). We review de novo a district judge’s interpretation of a statute. Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir.2012).
A. Federal Preemption
“In pre-emption cases, the question is whether state law is pre-empted by a fed *486 eral statute', or in some instances, a federal agency action.” POM Wonderful LLC v. Coca-Cola Co., — U.S. - — , 134 S.Ct. 2228, 2236, 189 L.Ed.2d 141 (2014) (citing Wyeth v. Levine, 555 U.S. 555, 563, 129 S.Ct. 1187, 1193, 173 L.Ed.2d 51 (2009)). The Supremacy Clause of the United States Constitution provides “the Laws of the United States ... shall be the supreme Law of the Land.” U.S. Const. Art. VI, cl. 2. “[W]e have long recognized that state laws that conflict with federal law are without effect.” Altria Grp., Inc. v. Good, 555 U.S. 70, 76, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008) (citation and internal quotation marks omitted); see Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996) (“[T]he Supremacy Clause requires courts to follow federal, not state, law.”).
The Supreme Court has identified three circumstantial categories, where federal law preempts state law. First is express preemption, where Congress defines “explicitly the extent to which its enactments pre-empt state law.” English v. Gen. Electric Co., 496 U.S. 72, 78, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). “[W]hen Congress has made its intent known through explicit statutory language, the courts’ task is an easy one.” Id. at 79, 110 S.Ct. at 2275; see Chamber of Commerce of U.S. v. Whiting, 563 U.S. -, -, 131 S.Ct. 1968, 1977, 179 L.Ed.2d 1031 (2011) (noting the plain wording of a federal statute “necessarily contains the best evidence of Congress’ preemptive intent”); Fla. State Conference of NAACP v. Browning, 522 F.3d 1153, 1167 (11th Cir. 2008) (“Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute.”).
Second is field preemption. English, 496 U.S. at 79, 110 S.Ct. at 2275. “[I]n the absence of explicit statutory language, state law is preempted where it' regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.” Id., 110 S.Ct. at 2275.
Such an intent may be inferred from a “scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,” or where an Act of Congress “touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.”
Id., 110 S.Ct. at 2275 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (alteration omitted). “Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards.” Arizona v. United States, — U.S. -, -, 132 S.Ct. 2492, 2502 (2012).
Third is conflict preemption, which occurs when “state law is pre-empted to the extent that it actually conflicts with federal law.” English, 496 U.S. at 79, 110 S.Ct. at 2275. Conflict preemption exists “where it is impossible for a private party to comply with both state and federal requirements or where state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” Id., 110 S.Ct. at 2275 (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)) (citations omitted). “[S]ince our decision in M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is ‘without effect.’ ” Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting Maryland v. Louisiana, *487 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)); see Baptista v. JPMorgan Chase Bank, N.A., 640 F.3d 1194, 1197 (11th Cir.2011) (recognizing “the proper preemption test asks whether there is a significant conflict between the state and federal statutes — that is, the test for conflict preemption”). The parties agree this case concerns conflict preemption, although they disagree on the resolution.[3]
B. Preemption Analysis
“Pre-emption fundamentally is a question of congressional intent,” which requires ■ statutory interpretation. English, 496 U.S. at 78-79, 110 S.Ct. at 2275. “As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.” Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citations and internal quotation marks omitted). “The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning, with regard to the particular dispute.” Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (11th Cir.2003) (citation and internal quotation marks omitted). “The ‘plain’ in ‘plain meaning’ requires that we look to the actual language used in a statute, not to the circumstances that gave rise to that language.” CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1224 (11th Cir.2001) (emphasis added); see Stansell v. Revolutionary Armed Forces of Colombia, 704 F.3d 910, 915 (11th Cir.2013) (“[A] statute’s plain language controls unless it is inescapably ambiguous.” (citation and internal quotation marks omitted)). “Where the language of a statute is unambiguous, as it is here, we need not, and *488 ought not, consider legislative history.” Harry v. Marchant, 291 F.3d 767, 772 (11th Cir.2002) (en banc); see United States v. Gonzales, 520 U.S. 1, 6, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (“Given the straightforward statutory command, there is no reason to resort to legislative history.”).
“We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable”; “we must give effect to the text Congress enacted.” Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228, 128 S.Ct. 831, 841, 169 L.Ed.2d 680 (2008) (emphasis added). As the Supreme Court has instructed “time and again,” courts presume Congress “says in a statute what it means and means in a statute what it says there.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54,112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citing Supreme Court-cases). “[W]hen the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.”[4] Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) (citations and internal quotation marks omitted). The text of § 24 (Fifth), resulting in the disposition of this case, is not absurd.
Under these principles of statutory construction, we must assess the alleged competing terms of the NBA and the FWA to resolve the conflict-preemption question presented. In relevant part, the NBA provides
a national banking association ... shall have power ... [t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.
12 U.S.C. § 24 (Fifth) (emphasis added); see Mackey v. Pioneer Nat’l Bank, 867 F.2d 520, 526 (9th Cir.1989) (recognizing the purpose of § 24 (Fifth) is to give national banks “the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust” without state regulatory interference).[5] In *489 contrast, the FWA provides “[a]n employer may not take any retaliatory personnel action against an employee because the employee has ... [ojbjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.” Fla. Stat. § 448.102(3).
Concluding federal statutes regulating national banks preempted conflicting state legislation preventing selling insurance in small towns, the Supreme Court noted:
Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted. To say this is not to deprive States of the power to regulate national banks, where (unlike here) doing so does not prevent or significantly interfere with the national bank’s exercise of its pcnvers.
Barnett Bank, 517 U.S. at 33, 116 S.Ct. at 1109 (emphasis added). Applying “ordinary legal principles of pre-emption,” the Court decided “the federal law would pre-
empt that of the State.” Id. at 37, 116 S.Ct. at 1111. The Florida Supreme Court has reached the same conclusion concerning the at-pleasure provision of § 24 (Fifth). Citizens Nat’l Bank & Trust Co. v. Stockwell, 675 So.2d 584, 586 (Fla.1996) (recognizing the at-pleasure provision of § 24 (Fifth) precludes any “limitation on the power of a bank to remove its officers” under the NBA).
The Fourth Circuit has addressed precisely the issue in this case: whether the at-pleasure provision of the NBA preempts a state-law claim for wrongful discharge. Schweikert v. Bank of Am,., N.A., 521 F.3d 285 (4th Cir.2008). Schweikert, a bank officer as Senior Vice President at the Chevy Chase, Maryland, office of Bank of America (“BOA”), was terminated by the Board of Directors for failing to cooperate with internal and external investigations of the bank. Id. at 287. Although Schweikert brought his action for wrongful or abusive discharge in Maryland state court, *490 BOA removed his case to federal court for the District of Maryland on diversity jurisdiction. Id. BOA moved to dismiss Schweikert’s complaint and argued it was preempted by the NBA at-pleasure provision. The district judge determined the NBA at-pleasure provision “precluded state common law wrongful discharge claims.” Id. at 287-88.
In affirming, the Fourth Circuit noted its precedent interpreting the analogous at-pleasure provision of the Federal Home Loan Bank Act (“FHLBA”)[6] in a wrongful discharge action, based on state law. Id. at 288 (citing Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir. 1993)). In Andrews, the Fourth Circuit concluded: “Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees. Any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress.” 998 F.2d at 220. Consistent with Andrews in the FHLBA context, the Fourth Circuit in Schweikert specifically held “the at-pleasure provision of the NBA preempts state law claims for "wrongful discharge.” Schweikert, 521 F.3d at 288-89.
Other circuits that have considered this issue have reached the same conclusion. The Ninth Circuit noted § 24 (Fifth)
has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ. An agreement which attempts to circumvent the complete discretion of a national bank’s board of directors to terminate an officer at will is void as against public policy.
Mackey, 867 F.2d at 524 (citing cases) (emphasis added). The Sixth Circuit also has recognized “ § 24 (Fifth) has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure.” Wiskotoni v. Mich. Nat’l Bank-West, 716 F.2d 378, 387 (6th Cir.1983) (citing cases); accord Arrow v. Fed. Reserve Bank of St. Louis, 358 F.3d 392, 394 (6th Cir.2004).
In a conflict-preemption case, the Supreme Court has recognized “federal law may be in irreconcilable conflict with state law,” such that “[c]ompliance with both statutes” results in a “physical impossibility,” causing the state law to “stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Barnett Bank, 517 U.S. at 31, 116 S.Ct. at 1108 (citations, internal quotation marks, and alteration omitted). Consistent with the Fourth Circuit in Schweikert and other federal circuit courts that have decided this issue,[7] we hold the at- *491 pleasure provision of the NBA preempts Wiersum’s claim under the FWA for wrongful discharge under Florida law, because the FWA is in direct conflict with the NBA, as the district judge decided.[8]
AFFIRMED.

. Fla. Stat. § 448.102(3).

. 12 U.S.C. § 24 (Fifth).

. The dissent strays from conflict-preemption analysis by viewing this case from the perspective of the FWA and thereby attempting to recast it as concerning state-police powers and state-employment contracts, even injecting at-will employment. Puzzling to us, the dissent supports her position with secondary authority, including law-review articles, a treatise, and nonbinding, distinguishable state and federal-district-court cases, when there are consistent Supreme Court, statutory-interpretive principles and federal-circuit precedent specifically supporting our decision that the at-pleasure provision of the NBA preempts the FWA. This is a straightforward case of conflict preemption, a specific and different analysis from the state-law analysis the dissent pursues by piecing together excerpts from Supreme Court cases that do not concern conflict preemption.
Despite her state-law approach, the dissent understates the Florida Supreme Court decision, addressing the interaction of § 24 (Fifth) and state-employment contracts providing severance benefits. Citizens Nat'l Bank & Trust Co. v. Stockwell, 675 So.2d 584 (Fla. 1996). The subject bank officers were terminated under the at-pleasure provision of the NBA, when their employing national bank merged with another bank, which did not want to purchase, existing employment contracts. The Florida Supreme Court quotes § 24 (Fifth) and notes it has remained the same as it was when the bank officers executed their employment contracts providing severance benefits. Id. at 586 & n. 1. While accepting the bank's ability to terminate the bank officers under § 24 (Fifth), the Florida Supreme Court distinguished and enforced the bank's separate agreement under state law to pay the officers' severance benefits should they be terminated under the NBA, as they were. "Because there is no limitation on the power of a bank to remove its officers, this result is completely consistent with the provisions of the National Bank Act.” Id. at 586 (emphasis added). Therefore, the Florida Supreme Court, which definitively decides Florida law, including the FWA, should this issue be presented, already has recognized that § 24 (Fifth) cannot be interpreted to require a bank to be liable for wrongful discharge of a bank officer terminated under the at-pleasure provision of the NBA, irrespective of state-employment contracts.

. The effect of implementing the dissent’s statutory interpretation would be to have this court rewrite 12 U.S.C. § 24 (Fifth), enacted in 1864 as part of the NBA, to permit terminated Florida bank officers to bring whistle-blower actions under the FWA, Fla. Stat. § 448.102(3), enacted in 1991. The Supreme Court has recognized a congressional statute may have stringent results, but, unless the results are absurd, that is not sufficient reason for courts to rewrite a congressional statute. "Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted.... The disposition required by the text here, though strict, is not absurd. It is for Congress, not this Court, to amend the statute. ...” Dodd v. United States, 545 U.S. 353, 359, 125 S.Ct. 2478, 2483, 162 L.Ed.2d 343 (2005) (emphasis added).

. In the 1864 NBA, Congress made a policy decision that granting banks broad discretion to dismiss specified bank officials was necessary to maintain public trust:
[I]t is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys. When it has once been secured, and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows. It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or *489 a president of a bank, spreads through the community in which he lives, scares the depositers, and threatens immediate financial ruin to the institution. In such a case it is necessary to the prosperity and success — to the very existence — of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence. In our opinion, the provision of the act of congress to which we have referred was inserted, ex industria, to provide for this very contingency.
Westervelt v. Mohrenstecher, 76 F. 118, 122 (8th Cir.1896); see Stockwell, 675 So.2d at 586 (“ 'Public trust' is assuaged by filling major decisionmaking positions with individuals the bank deems more capable than those it terminates; the [employment] contracts at issue do not prevent the bank from so doing.”).
The dissent maintains § 24 (Fifth) is no longer applicable law, because it was enacted 150 years ago. Under that rationale, statutes and cases, such as Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824), M'Culloch v. Maryland, 17 (4 Wheat.) 316 (1819), and Mar-bury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), enacted or decided in the nineteenth century would be obsolete and not reliable precedent today. Instead, longevity shows a statute or case has withstood the test of time without change.
The NBA is a series of congressional acts of which the subject 1864 Act is a part. See 1 Stat. 191, ch. 10 (1791); 3 Stat. 266, ch. 44 (1816); 13 Stat. 99, ch. 106 (1864); 18 Stat. 123, ch. 343 (1874); 63 Stat. 298, ch. 276, § 1 (1949); Pub.L. 86-114, § 3(b), 73 Stat. 263 (1959); Pub.L. 86-230, § 1(a), 73 Stat. 457 (1959). While § 24 has been amended numerous times, § 24 (Fifth) never has been amended, just as 12 U.S.C. § 38, enacted in 1874, never has been amended. Congress is presumed to "know the law” and has convened many times since a particular statute was enacted or case decided. Cannon v. Univ. of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 1957-58, 60 L.Ed.2d 560 (1979). Because Congress has not seen fit to amend § 24 (Fifth) in 150 years, it remains unchanged, reliable law.

. The FHLBA, 12 U.S.C. § 1432(a), and the Federal Reserve "Act ("FRA”), 12 U.S.C. § 341 (Fifth), have analogous at-pleasure provisions, which give the board of directors of a federal bank authority to dismiss its officers "at pleasure.” The FHLBA and the FRA, however, are separate acts from the NBA, about which this case is concerned.

. 'The dissent imagines far-fetched scenarios that could result from interpreting § 24 (Fifth) as it was written by Congress, if the board of directors of a national bank were to dismiss officers for personal predilections rather than business reasons. That has not been the experience for 150 years, manifested by decisions of other federal circuit courts that have addressed this issue during that time. See, e.g., Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 (3d Cir.2004) ("We now explicitly join the approach uniformly adopted by other courts considering this issue. We hold that the Federal Reserve Act precludes enforcement against a Federal Reserve Bank of an employment contract that would compromise its statutory power to dismiss at pleasure, and prevents the develop *491 ment of a reasonable expectation of continued employment.”).
The gist of the dissent's position is a state-employment contract can trump an act of Congress, even in a conflict-preemption situation. There is no contest. The NBA is the congressional act that governs all national banks in the United States. The ability of the board of directors of a national bank to dismiss its officers "at pleasure” is clear and unequivocal, as the federal-circuit courts that have addressed this issue have concluded. 12 U.S.C. § 24 (Fifth).

. For the first time on appeal, Wiersum makes arguments he did not raise before the district judge: the NBA at-pleasure preemption should be limited to contractual claims; reversal is required under the partial-preemption doctrine, because his FWA claim is consistent with the provisions of 12 U.S.C. § 5567 within § 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010; his termination was contrary to 12 U.S.C. § 183 lj, according a national-bank employee whistleblower protection only if a complaint procedurally first was made to the appropriate federal agency or the Attorney General, 12 U.S.C. § 1831j(a)(l); which Wiersum did not do; and a state-law retaliation claim based on underlying banking law is not preempted, despite, an analogous federal whistleblower statute. See Appellant's Br. at 22-37. We strongly disagree the excerpt quoted in the dissent from Wiersum's opposition to U.S. Bank’s motion to. dismiss in dis-' trict court specifically addresses any of these issues raised on appeal. Instead, she characterizes the objection he has made to application of the at-pleasure provision of § 24 (Fifth) from the outset of his case, which the district judge addressed, and we have decided for this circuit. We have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.” Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir.2004) (citations and internal quotation marks omitted). Therefore, Wiersum has waived all his arguments on appeal that he did not raise first before the district judge, and we will not address them.
The Amicus Brief of the National Employment Lawyers Association (“NELA”), Florida ’ Chapter predicts speculative and conclusory effects on state employment laws, if we decide the NBA preempts the FWA, as if he had no federal remedy. But NELA fails to recognize that Wiersum could have brought his action under the applicable federal-banking-whistle-blower statute, 12 U.S.C. § 183lj. Section 183 lj, however, requires a whistleblower employee or former employee of a national bank to report the alleged wrongdoing to the agency that regulates the bank or to the Attorney General. 12 U.S.C. § 183lj(a)(l). Wiersum ■ did not comply with either of these prerequisites for a § 183 lj action, which is the reason he unsuccessfully attempts to proceed instead under the FWA.